Case 05-02036    Filed 06/02/05    Doc 26

POSTED ON WEB SITE

FILED
JUN - 2 2005
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>BEAU LAYTON-RALPH,<br><br>               Debtor.<br>_____<br><br>MICHAEL BURKART,<br><br>               Plaintiff,<br><br>v.<br><br>SHELLEY EVANS,<br><br>               Defendant.<br>_____ | Case No. 01-25377-B-7<br><br>Adversary No. 05-2036 |

## MEMORANDUM DECISION

### I. INTRODUCTION

On June 1, 2005, the court held a trial in the above adversary proceeding brought by the plaintiff chapter 7 trustee Michael Burkart (the "Trustee") to obtain turnover of property of the estate. This action had its genesis in a prior action by the Trustee to deny the discharge of the debtor Beau Layton-Ralph (the "Debtor") and for turnover of property of the estate. The defendant in this action, Shelley Evans, ("Evans") is the Debtor's sister.

The court has jurisdiction in this matter under 28 U.S.C. section 1334(b). It is a core proceeding under 28 U.S.C. section 157(b)(2)(E), in which the court may make its own findings of fact and conclusions of law. This decision constitutes the court's findings of fact and conclusions of law under Federal Rule of Civil

Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052.

## II. BACKGROUND TO THIS ACTION

The Debtor filed a voluntary chapter 7 case on May 2, 2001. On November 5, 2001, the Trustee filed a complaint objecting to the Debtor's discharge under various provisions of Bankruptcy Code section 727 and also seeking a turnover of property of the estate. The gist of the complaint was that the Debtor's schedules were inaccurate, because they failed to disclose her interest in various estate assets. At the conclusion of a two-day trial, the court issued a Memorandum Decision dated November 7, 2002, concluding that the Debtor would be denied her discharge.

In the Memorandum Decision, the court found that the Debtor had failed to disclose the existence of three pieces of jewelry, consisting of a 2.5 carat diamond ring, a 1.3 carat diamond ring, and a diamond tennis bracelet (collectively, the "Jewelry"), in her Schedules of Assets and Liabilities . The Memorandum Decision at pages 4-5 states, with respect to the Jewelry, that:

> At trial both the Debtor and her sister Shelly [sic] Evans ("Evans") testified that the Debtor had sold these items to Evans in June 1999 in forgiveness of loans Evans had made to the Debtor. This testimony was at odds with both the Debtor's and Evans's prior deposition testimony that the three items were given to Evans as collateral for the loans. The court did not find the inconsistent testimony at trial, when the parties understood the import of the distinction between a purchase and a pledge, credible. Accordingly, it finds that this expensive jewelry is property of the estate ...

Judgment was delayed following the trial and this decision to permit the parties to brief legal issues concerning the Debtor's interest in her ex-husband's retirement plan. Following resolution of this issue, the court entered a Judgment on April 25, 2003 (the

- 2 -

"Judgment"), which provides in pertinent part that:

> Three items of jewelry, described as (1) a diamond wedding/engagement ring with a 2.72 carat diamond; (2) a diamond wedding/engagement ring with a 1.41 carat diamond; and (3) a 6 carat (total weight) diamond tennis bracelet, are property of the chapter 7 estate. Beau Layton-Ralph is hereby ordered to turn these items of jewelry over to Michael Burkart, the Trustee, and to the extent such items are not in her possession, assist and cooperate with the Trustee in recovery of such items.

The Judgment was not appealed.

### III.   THIS ADVERSARY PROCEEDING

On January 24, 2005, the Trustee commenced the present adversary proceeding against Evans seeking turnover of the Jewelry. The action was based on the Judgment and the provisions of 11 U.S.C. section 542(a). According to the Complaint, Evans was in possession of the Jewelry and had failed to account for or turn over this estate asset.

The court denied the Trustee's motion for summary judgment on the basis that Evans was not in privity with the Debtor, the only defendant in the prior action. Prior to trial, the Trustee provided additional authorities for the proposition that the bankruptcy court's *in rem* jurisdiction over property of the estate makes the Judgment binding as to the entire world, even non-parties. Without deciding the *res judicata* effect of the Judgment on Evans' claimed interest in the Jewelry, the court heard additional testimony regarding the underlying transaction between the Debtor and her sister.

### IV.   THE TRIAL

Evans' testimony at trial buttressed the court's prior conclusion that Evans obtained the Jewelry as a pledge to secure repayment of her loans to the Debtor. Her June 2002 deposition

testimony remains strikingly candid. During the deposition, taken well before either trial, Evans contradicted the Trustee's attempts to characterize the transaction as a purchase and suggested in her own words that the Jewelry was "collateral" for loans to her sister. When asked by the Debtor's attorney whether Evans had "purchased" the jewelry, she responded unequivocally that "I didn't purchase it."

Evans testified at this trial that she was "confused" during the deposition. However, the confusion resulted only after Evans learned she might have to return the Jewelry to the Trustee. The court remains persuaded that the Jewelry was pledged to Evans to secure the Debtor's repayment of loans totaling $6,000. Any other version of the transaction is riddled with inconsistencies that Evans cannot credibly explain.

According to Evans' testimony, she sold the Jewelry to her husband's friend for $6,000 in November 2002, immediately after the court's unfavorable decision but before entry of the Judgment. Due to this development, the Trustee presented evidence of the value of the Jewelry as an alternative to recovery of the Jewelry itself.

Alison LeBaron, an expert jewelry appraiser, testified that the three items in question would have a total fair market value of $11,200 if sold by a private person in the secondary (or resale) market. She based her testimony on earlier appraisals, lab reports and receipts for the items in question. Evans did not present any evidence to rebut the values established by LeBaron. Rather, she attempted to demonstrate that the items appraised by LeBaron were not necessarily the same three items of jewelry identified in the Judgment.

The Judgment refers to a 2.72 carat diamond ring. This description is an obvious typographical error in that the original Memorandum Decision (based on a June 18, 1999 writing signed by Evans) refers to a 2.5 carat diamond ring. Evans did not question that the diamond tennis bracelet, which is the subject of the writing and the Memorandum Decision is the same item LeBaron appraised.

The final item is a diamond ring, described in the June 18, 1999 document, as having 1.33 carats. Donald Evans, the defendant's husband, testified that he was familiar with one of the rings that the Debtor gave to his wife in 1999. He described this ring as "small, less than one carat in size." He further testified that he had been present when the Debtor's former husband, purchased the ring in 1995 for $500 in San Francisco. LeBaron based her appraisal on a 1986 appraisal of a 1.4 carat ring, which would necessarily be a different ring. The court is not persuaded, however, that LeBaron relied on inaccurate documents. Until this trial, Evans did not challenge that she received a diamond ring of approximately 1.3 carats, certainly not the "small" diamond described by her husband.

Accordingly, the court concludes that the total fair market value of the Jewelry is $11,200. The individual pieces have the following values: 1) the 2.5 carat diamond ring - $8,000; 2) the 1.4 carat diamond ring - $2,000; and 3) the tennis bracelet - $1,200.

## V. CONCLUSION

Based on the record in this trial, the court concludes that the Jewelry is property of the estate. It does not need,

therefore, to reach the legal issue of the *res judicata* effect of the Judgment on Evans.

Under 11 U.S.C. section 542(a), a person "in possession, custody, or control, during the case," of estate property "shall deliver to the trustee, and account for, such property or value of such property ..." Evans was admittedly in possession of the Jewelry when this case was filed. She remained in possession until the court's ruling in November 2002 that the Jewelry was property of the estate. Immediately thereafter, she sold it to a friend.

The Trustee is entitled under section 542(a) to turnover of the Jewelry, or, alternatively, its established value of $11,200. The Trustee shall present a proposed judgment consistent with this decision.

Dated:  June 2, 2005

_____
JANE DICKSON McKEAG
United States Bankruptcy Judge

```
                    UNITED STATES BANKRUPTCY COURT

                     EASTERN DISTRICT OF CALIFORNIA


In re:                          )   Case No. 01-25377-B-7
                                )
BEAU LAYTON-RALPH,              )   Adversary No. 05-2036
                                )
                                )
                  Debtor.       )
_____)
                                )
MICHAEL BURKART,                )
                                )
                  Plaintiff,    )
                                )
v.                              )
                                )
SHELLEY EVANS,                  )
                                )
                  Defendant.    )
_____)


                       Certificate of Service

      I certify that on  6-2-05            , a copy of the
foregoing **document** was mailed to the following:
```

Gregory Hughes
3017 Douglas Blvd #300
Roseville, CA 95661

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

Al Patrick
701 High St #207
Auburn, CA 95603

```
                              FOR THE COURT
                              RICHARD G. HELTZEL
                              CLERK, U.S. BANKRUPTCY COURT


                              By: _____[signature]_____
                                   Deputy Clerk
```